UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHON BARKLEY, | Civil Action No. 23-1510 (RK) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION & ORDER |
| DR. ABU AHSAN, et al., | |
| Defendants. | |

This matter has been opened to the Court by Rashon Barkley's ("Plaintiff" or "Barkley") filing of a Complaint asserting civil rights violations and medical negligence, a renewed application to proceed *in forma pauperis* ("IFP application"), and a "Motion to File a Late Notice of Tort Pursuant to N.J.S.A. 59:8-9[.]" ECF Nos. 1, 8, 2. At this time, the Court reopens this matter and grants Plaintiff's IFP application. For the reasons explained below, the Court permits Plaintiff's Eighth Amendment claims for inadequate medical care and his state law claims for medical negligence to survive the Court's screening under 28 U.S.C. § 1915(e)(2)(B). The Court administratively terminates Plaintiff's motion to file a late notice of claim, giving him the benefit of the filing date, and directs the Defendants Dr. Abu Ahsan and Nurse Lynn Johnson to respond to Plaintiff's motion when they file their responsive pleading(s).

I.      **RELEVANT BACKGROUND**

a.  **The Procedural History**

Plaintiff submitted the instant Complaint to prison officials for filing on or about March 17, 2023,[1] *see* ECF No. 1, Complaint at 18, accompanied by an application to proceed *in forma*

---

[1] Under the standards announced in *Houston v. Lack*, 487 U.S. 266 (1988), Plaintiff's Complaint is deemed filed on the date he handed it to prison officials for mailing. The Court assumes for

*pauperis* ("IFP application") and a motion to file a late notice of claim. ECF Nos. 1-2, 2. Plaintiff also filed a motion for pro bono counsel on March 27, 2023. ECF No. 4. The matter was originally assigned to the Honorable Michael A. Shipp, and, on May 9, 2023, the Court denied without prejudice Plaintiff's IFP application as incomplete. ECF No. 5. The Magistrate Judge also denied without prejudice Plaintiff's motion for pro bono counsel. ECF No. 6. On May 15, 2023, the matter was transferred to the undersigned. ECF No. 7. On May 26, 2023, Plaintiff resubmitted his IFP application, ECF No. 8, which the Court has granted.

### b.  The Complaint's Factual Allegations

Beginning in November 2012, while incarcerated at New Jersey State Prison, Plaintiff began experiencing severe pain in his face, head, and neck. Complaint at ¶ 1. His symptoms included severe headaches, numbness and tingling on the left side of his face, nose, mouth, and body, and dizziness that affected his ability to function. *Id.* at ¶¶ 2-3.

Plaintiff reported his symptoms to Dr. Abu Ahsan ("Dr. Ahsan") who prescribed him medications that should not be taken simultaneously; the medications were also ineffective, and Plaintiff's symptoms continued. *Id.* at ¶¶ 3-4. According to Plaintiff, Dr. Ahsan intentionally and erroneously insisted that Plaintiff's symptoms were from a prior shoulder injury in order to provide "superficial treatment" and save money for his employer, University Medicine and Dentistry of New Jersey ("UMDNJ"). *Id.* at ¶ 4. Plaintiff complained continuously about his symptoms to Dr. Ahsan and told him the medications did not help. *Id.* at ¶ 5.

On or about December 5, 2012, Nurse Lynn Johnson ("Nurse Johnson") prescribed Plaintiff different pills, which also did not alleviate his symptoms, and Plaintiff complained to

---

purposes of screening that Plaintiff handed his Complaint and his motion to file a late notice of claim to prison officials for filing on March 17, 2023.

both Dr. Ahsan and Nurse Johnson that the medications did not work. *Id.* From December 12, 2012 through March 12, 2013, Plaintiff begged Dr. Ahsan and Nurse Johnson to see a specialist for an MRI, but they both denied his requests for treatment in order to save money and continued treating him with pills. *Id.* at ¶ 6.

On or about November 10, 2012, Plaintiff wrote a letter to then-Governor Chris Christie and received a response from Marci L. Masker at UMDNJ, which acknowledged his complaints and suggested that he be referred to a doctor for treatment. *Id.* at ¶ 7. Dr. Ahsan and Nurse Johnson still refused to treat Plaintiff's headaches with anything other than the pills. *Id.* Plaintiff was provided an x-ray of his head, which was normal, and both Dr. Ahsan and Nurse Johnson "yelled" at Plaintiff for complaining and refused to provide further treatment. *Id.* at ¶ 8.

After seeking help from the Ombudsman and Dr. Ralph Woodward, Plaintiff received a letter from La Wana Darden from UMDNJ, who recommended that Plaintiff be referred to another doctor to read his x-ray results. *Id.* at ¶ 9. Dr. Ahsan and Nurse Johnson refused to refer him to a specialist to treat his pain with effective medications, and Plaintiff continued to suffer. *Id.*

On February 9, 2013, Plaintiff again sought help from Darden, who forwarded his letter to Dr. Margaret Reed, the Statewide Medical Patient Advocate. *Id.* at ¶ 10. Dr. Reed contacted Dr. Ahsan, who lied and told Dr. Reed that all of Plaintiff's cranial nerves were intact in order to save money and avoid referring Plaintiff to a specialist or for an MRI. *Id.* Plaintiff wrote to Darden again on June 20, 2014, to complain that his symptoms had gotten worse and that he was experiencing ringing in his ears that affected his hearing. *Id.* at ¶ 11. Dr. Ahsan and Nurse Johnson did not refer him to see a neurologist or have an MRI performed despite Plaintiff's pleas on multiple occasions. *Id.*

3

In 2018, Plaintiff was treated by Dr. Ruppert Hawes, who took Plaintiff's complaints seriously and sought approval for an MRI.  The MRI occurred on June 8, 2018, and confirmed that Plaintiff has TMJ, which was caused by a kick to Plaintiff's face in 1998 that pushed a facial bone into the trigeminal nerve.  *Id.* at ¶ 12.

According to Plaintiff, both Dr. Ahsan and Nurse Johnson learned of Plaintiff's TMJ condition but still refused to allow Plaintiff to be seen by a neurologist.  *Id.* at ¶ 13.  Plaintiff symptoms persisted, and he continued to ask Dr. Ahsan and Nurse Johnson to refer him to a neurologist for treatment, but these requests were disregarded by Dr. Ahsan and Nurse Johnson. *See id.* at ¶¶ 13-14.

In July 2021, Plaintiff was transferred to East Jersey State Prison, where he immediately requested to be seen by a neurologist regarding his TMJ symptoms.  *Id.* at ¶ 15.  Medical Provider Gloria Trinidad, who is not a Defendant in this action, granted his request.  *Id.*

Several months later, on October 28, 2022, Plaintiff had a consultation with Dr. Javier Taboada, who reconfirmed that Plaintiff has TMJ.  *Id.*  On January 17, 2023, Plaintiff received a written diagnosis informing him that his TMJ condition is permanent and non-correctable because Plaintiff needed to be seen by a neurologist much earlier.  *Id.*

Plaintiff also alleges in his Complaint that the inquiries and grievances he filed at East Jersey State Prison have been ignored.  *Id.* at ¶ 16.

In addition to his factual allegations, Plaintiff alleges generally that Dr. Ahsan and Nurse Johnson have a history of deliberate indifference.  *Id.* at ¶ 17.  Plaintiff further alleges that Dr. Ahsan and Nurse Johnson's  intentional and malicious refusal to send Plaintiff for an MRI and a neurological consultation earlier despite his many symptoms amounts to deliberate indifference to his serious medical needs and delayed necessary diagnosis of and treatment for Plaintiff's

TMJ. *Id.* at ¶ 18.  Plaintiff alleges that he has trigeminal nerve damage, that his condition has worsened over time, that he is not a candidate for surgery, and that he has a reduced life expectancy and continues to suffer.  *Id.* at ¶ 19.  The Complaint includes two counts for relief: 1) Eighth Amendment deliberate indifference to Plaintiff's serious medical needs and 2) state law medical negligence.  *Id.* at ¶¶ 20-29.

## II.     <u>STANDARD OF REVIEW</u>

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage, the Court accepts facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citing *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  The Court does not credit conclusory allegations.  *Iqbal*, 556 U.S. at 678.  Because Plaintiff is proceeding pro se, the

Court construes his allegations liberally.  *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III.    DISCUSSION

#### a.    The Eighth Amendment Deliberate Indifference Claims

The Court starts with the federal claims and construes Plaintiff to assert civil rights violations pursuant to 42 U.S.C. § 1983 arising from alleged inadequate medical care from Dr. Ahsan and Nurse Johnson.  The Eighth Amendment requires "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Duran v. Merline*, 923 F.Supp.2d 702, 719 (D.N.J. 2013) (explaining that the Constitution mandates that prison officials satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety") (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  "To plead deliberate indifference under the Eighth Amendment, a plaintiff must allege that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).  "Indifference to a substantial risk of serious harm is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, or a denial of reasonable requests for treatment that leads to suffering or risk of injury." *Id.* at 230 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)).  Moreover, prison officials may not "deny reasonable requests for medical treatment ... when such denial exposes the inmate to undue suffering or the threat of tangible residual injury." *Id.* (citing *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (cleaned up)).

The Court liberally construes Plaintiff to allege the following facts.  From November 2012-July 2021, Dr. Ahsan and Nurse Jackson intentionally misdiagnosed Plaintiff's symptoms, provided ineffective treatments that led to Plaintiff's suffering, refused to send him for an MRI and/or refer him to a neurologist for treatment, and provided inadequate care in order to save money.  Even after Plaintiff received an MRI diagnosing him with TMJ and nerve damage 2018, the Defendants repeatedly refused to change his treatment or refer him to a neurologist.  Plaintiff was eventually transferred to East Jersey State Prison in July 2021.  After seeking and receiving a referral to a neurologist in October 2022, Plaintiff learned in January 2023 that his injuries were not correctable due to the delay in treatment.

The Court notes that a § 1983 claim arising in New Jersey has a two-year statute of limitations.  *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 4 (3d Cir.1998)).  New Jersey law governs whether Plaintiff is entitled to tolling of his § 1983 claims based upon equitable principles, including the discovery rule.  *Id.* (citing *Freeman v. State*, 347 N.J. Super. 11 (App. Div. 2002)).  The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person.[2]  *See id.* (citing *Caravaggio v. D'Agostini*, 166 N.J. 237, 246 (2001)). In addition, the continuing violations doctrine is an equitable exception to the timely filing requirement that applies when a defendant's conduct is part of a continuing practice and the last

---

[2] Although tolling is governed by state law, federal law governs the accrual of a § 1983 claim. Accrual is the occurrence of damages caused by a wrongful act—when a plaintiff has a complete and present cause of action, can file suit, and obtain relief. *Dique*, 603 F.3d at 185–86.

act evidencing the continuing practice was within the limitations period. *See Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001).

The Court assumes for purposes of screening the Complaint under § 1915(e)(2)(B) that the discovery rule and/or the continuing violations doctrine may apply to Plaintiff's § 1983 claims. Moreover, to the extent the continuing violations doctrine applies, the last violative act by Dr. Ahsan and/or Nurse Johnson potentially occurred prior to Plaintiff's transfer and within the two-year limitations period for a § 1983 claim. Because Plaintiff otherwise states a claim for relief under the Eighth Amendment against both Defendants, the Court permits the Eighth Amendment claims for inadequate medical care against Dr. Ahsan and Nurse Johnson to proceed at this preliminary stage.[3]

### b. The Medical Negligence Claims and Motion to File a Late Notice of Claim

Plaintiff also brings claims for state law medical negligence, and he has filed a motion to submit a late notice of claim pursuant to N.J.S.A. 59:8-9. That provision provides as follows:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

---

[3] The Court makes no determination at screening regarding whether Plaintiff will ultimately be entitled the benefit of the discovery rule and/or the continuing violation doctrine with respect to his federal claims or the dates on which Plaintiff's claim(s) accrued against each Defendant.

8

N.J.S.A. 59:8-9.

Under New Jersey law, before determining whether a claimant has timely filed within the ninety-day time period, a court must determine the date on which the claim(s) accrued. *McDade v. Siazon*, 208 N.J. 463, 475 (2011) ("The first task is always to determine when the claim accrued."). In determining whether a notice of claim under N.J.S.A. 59:8-8 has been timely filed, the discovery rule can toll the accrual date. *See Beauchamp v. Amedio*, 164 N.J. 111, 118-119 (2000). As noted above, the discovery rule "allows for delay of the legally cognizable date of accrual when the victim is unaware of his injury or does not know that a third party is liable for the injury." *Ben Elazar v. Macrietta Cleaners, Inc.*, 230 N.J. 123, 134 (2017); *see also Caravaggio*, 166 N.J. at 253 (finding that Plaintiff's medical negligence claim did not accrue against his surgeon until he learned that the rod implanted by the surgeon was not defective and the rod manufacturer was exonerated); *Torres v. Jersey City Medical Center*, 140 N.J. Super. 323, 327 (Law Div. 1976) (explaining that "plaintiff did not know and had no reason to know of the x-ray damage to her ovaries or of the existence of a cause of action based thereon until the condition was disclosed upon the removal of the ovaries").

Once the Court determines the date of accrual, it determines whether a notice of claim was filed within ninety days. *Beauchamp*, 164 N.J. at 118-119. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice. *Id.* Courts have no jurisdiction, however, to extend the period for filing a notice of claim where notice was filed beyond one-year statutory limit and the discovery rule does not apply. *Iaconianni v. New Jersey Turnpike Authority*, 236 N.J. Super. 294, 298 (App. Div. 1989), certif. denied 121 N.J. 592 (1990); *see also Hill v. Board of Educ. of Middletown Tp.*, 183 N.J. Super. 36, 40 (App. Div.

1982) ("judicial discretion to extend the time for filing of the requisite notice does not survive the passage of one year following the accrual date of the claim.").

Here, the Court takes judicial notice of the date on which Plaintiff submitted his motion for permission to submit a late notice of claim and deems that motion filed on March 17, 2023. The Court finds, however, that the Defendants should have an opportunity to respond to Plaintiff's motion to submit a late notice of claim. At this time, the Court permits Plaintiff's medical negligence claims to survive the Court's screening under § 1915(e) and administratively terminates the motion to file a late notice of claim pending a response from Defendants. The Court will decide Plaintiff's motion after Defendants file their responsive pleading(s) and a response to Plaintiff's motion.[4]

## IV.    CONCLUSION

For the reasons explained in this Memorandum Opinion, the Court grants Plaintiff's IFP application and proceeds the Eighth Amendment inadequate medical care claims and state law medical negligence claims against Dr. Ahsan and Nurse Johnson. The Court will direct the Clerk's Office to file the Complaint and send Plaintiff the forms for serving the Defendants. The Court gives Plaintiff the benefit of the March 17, 2023 filing date for his motion to file a late notice of claim and directs the Clerk of the Court to administratively terminate that motion pending a response from Defendants. The Court will decide Plaintiff's motion to file a late notice of claim once Defendants respond to the motion.

**IT IS, THEREFORE**, on this ___31st___ day of ___October___ 2023,

---

[4] If Defendants file a motion(s) to dismiss, they are free to address Plaintiff's motion to file a late tort claim notice in their moving brief(s).

**ORDERED** that the Clerk of the Court shall mark this matter as OPEN; and it is further

**ORDERED** that Plaintiff's renewed IFP application (ECF No. 8) is GRANTED; and it is further

**ORDERED** that the Complaint (ECF No. 1) shall be FILED; and it is further

**ORDERED** that the Eighth Amendment claims for inadequate medical care and the state law claims for medical negligence shall PROCEED at this time as to Defendants Dr. Abu Ahsan and Nurse Lynn Johnson; and it is further

**ORDERED** that the Clerk of the Court shall provide Plaintiff with copies of the USM-285 form for Defendants; and it is further

**ORDERED** that Plaintiff shall complete the forms for these Defendants <u>only</u> and return them to the Clerk of the Court; and it is further

**ORDERED** that upon Plaintiff's sending of the completed forms to the Clerk of the Court, the Clerk shall issue summons, and the United States Marshal shall serve a copy of the Complaint (ECF No. 1), the motion to file a late notice of claim (ECF No. 2), summons, and this Order upon Defendants pursuant to 28 U.S.C. § 1915(d), with all costs of service advanced by the United States; and it is further

**ORDERED** that Defendants shall file and serve a responsive pleading within the time specified by Federal Rule of Civil Procedure 12; and it is further

**ORDERED that Defendants shall also respond to Plaintiff's motion to file a late notice of claim (ECF No. 2) when they file their responsive pleading(s);**

**ORDERED** that the Clerk of the Court shall ADMINISTRATIVELY TERMINATE Plaintiff's motion to file a late notice of claim (ECF No. 2) for docket management purposes

11

pending a response from Defendants; the Court takes notice, however, of the March 17, 2023 filing date for that motion; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel; and it is further

**ORDERED** that, if at any time prior to the filing of a notice of appearance by Defendant(s), Plaintiff seeks the appointment of pro bono counsel or other relief, pursuant to Fed. R. Civ. P. 5(a) and (d), Plaintiff shall (1) serve a copy of the application by regular mail upon each party at his last known address and (2) file a Certificate of Service;[5] and it is further

**ORDERED** that the Clerk of the Court shall serve Plaintiff with copies of this Memorandum Opinion and Order via regular mail.

Robert Kirsch
United States District Judge

---

[5] After an attorney files a notice of appearance on behalf of a Defendant, the attorney will automatically be electronically served all documents that are filed in the case.